**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CRIMINAL ACTION NO. 18-46-DLB-CJS**

**UNITED STATES OF AMERICA**                                                                 **PLAINTIFF**

**v.**                  **MEMORANDUM OPINION AND ORDER**

**AARON S. SMITH**                                                                        **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**I.    INTRODUCTION**

This matter is before the Court on Defendant's Motion to Suppress all evidence seized from his vehicle during a traffic stop on July 11, 2018. (Doc. # 13). In his Motion, Defendant Smith alleges that police officers lacked probable cause to stop his vehicle and that a subsequent search of his vehicle constituted an unreasonable search in violation of the Fourth Amendment. Smith therefore argues that all evidence seized from the stop should be suppressed. *Id.*

On March 20, 2019, the Court held an evidentiary hearing on the Motion. (Doc. # 34). Defendant Smith was present at the hearing and represented by attorney F. Dennis Alerding. *Id.* The United States was represented by Assistant United States Attorney Wade Napier. *Id.* The hearing was recorded by the Official Court Reporter Lisa Wiesman. *Id.* Prior to the hearing, the Defendant filed a Memorandum in Support of his Motion to Suppress (Doc. # 17), and the United States filed a Response in Opposition (Doc. # 23). After the hearing, the Court allowed the parties to file supplemental memoranda (Docs. #

38 and 39), and the Motion is now ripe for the Court's review. For the reasons set forth herein, Defendant's Motion to Suppress (Doc. # 13) is **denied**.

## II.   FINDINGS OF FACT

Three witnesses testified during the March 20, 2019 evidentiary hearing on behalf of the United States: Drug Enforcement Administration (DEA) Special Agent Troey Stout, Kentucky State Police (KSP) Interdiction Sergeant William Lindon, and KSP K-9 Officer Brian Smith. (Doc. # 35). The Defendant recalled Sergeant Lindon to testify but did not call any other witnesses. Weighing the credibility of the witnesses' testimony presented at the evidentiary hearing, the Court makes the following factual findings:

1. At some time in May or June, 2018, the DEA office in Detroit, Michigan advised DEA Agent Troey Stout that Defendant Aaron Smith was suspected of traveling from Michigan to Kentucky to distribute heroin. At the time, Agent Stout worked with an interdiction team in the central Kentucky region staffed by the KSP. The interdiction team was tasked with responding to call-outs from the DEA and other federal agencies. Stout was advised that the Detroit DEA office might need the assistance of the interdiction team based upon the investigation of Defendant's suspected drug-trafficking activity.

2. Agent Stout was further advised that a Michigan court had issued a tracking warrant allowing the DEA to track Defendant's vehicle, a 2002 Toyota 4Runner. The warrant was issued based upon an affidavit attesting that a confidential source (CS) had advised the DEA that Mr. Smith was distributing heroin from Michigan to Kentucky two to three times per month. The CS indicated that the heroin was being transported in Smith's 2002 Toyota 4Runner with Michigan license plates, and that the CS had seen Smith transporting a package of heroin. The CS also reported that after Smith sells the drugs

2

in Kentucky, he takes the drug proceeds to Mexico. The CS provided Defendant's address in addition to identifying the vehicle and its Michigan plates.

3. Agent Stout was advised that the DEA was able to corroborate some of this information through surveillance and other means. More specifically, the DEA confirmed Defendant's address, the identity of the vehicle, and the vehicle's location at the same address. The U.S. Border Patrol also confirmed border crossings involving Mr. Smith, and administrative subpoenas issued to Western Union revealed wire transfers from Mr. Smith to individuals in Mexico. Additionally, through surveillance of the tracker placed on Defendant's vehicle, the DEA observed Defendant make at least three trips to Lexington, Kentucky, from Michigan, by way of Interstate 75.

4. In July 2018, the Detroit DEA office contacted Agent Stout and advised that the tracker revealed the vehicle was traveling south toward Kentucky. On July 11, 2018, Agent Stout gathered the interdiction team and traveled to an interception point in Grant County, Kentucky, to monitor Interstate 75 for Defendant's vehicle. Agent Stout was given access to the tracker data and was able to watch the vehicle as it traveled southbound. Stout guided the interdiction team to Defendant's vehicle.

5. At approximately 9:00 p.m. on that date, the KSP interdiction officers patrolling Interstate 75 observed Defendant's Toyota 4Runner and began to follow it. While following the vehicle for approximately seven miles, KSP Interdiction Sergeant William Lindon and other members of the KSP interdiction team observed the vehicle cross the right-side "fog line" into the shoulder twice within a short distance. Based upon this traffic violation, Lindon initiated a traffic stop.[1]

---

[1] KSP issued a citation for the traffic violation.

6. During the stop, Defendant confirmed that the vehicle was registered to him and presented identification matching the name and address provided by the CS. Defendant also told officers that he was traveling to Lexington, Kentucky.

7. Officers requested consent to search the vehicle from the Defendant, who was the driver and only occupant. After some discussion, Defendant did not consent to the search.

8. Sergeant Lindon then called the nearby KSP K-9 Officer Brian Smith to the scene. Officer Smith was assigned to the interdiction team that evening, and it took him approximately four minutes to arrive with his certified narcotics dog. Smith directed the dog to conduct a free-air sniff of the vehicle. Officer Smith testified that the dog is properly certified and is reliable in alerting to the presence of narcotics. Officer Smith further testified that the dog sat down—indicating a positive alert—at the front fender on the passenger side of the vehicle.

9. In order to safely search the vehicle away from interstate traffic, at approximately 9:39 p.m., KSP transported it along with the Defendant to a local mechanic's garage about two miles away.

10. At approximately 11:14 p.m., after several hours of searching the vehicle, officers found a large bag of heroin hidden in a compartment behind the dashboard radio. The officers also seized a silver iPhone and a Samsung cell phone. Defendant was then arrested at approximately 1:04 a.m. on July 12, 2018.

### III. ANALYSIS

Defendant raises four main arguments in support of his Motion to Suppress. First, Defendant argues that the initial stop by KSP Sergeant Lindon violates the Fourth

4

Amendment because the interdiction team invented a "minor traffic violation" as a pretext to make the stop. (Doc. # 17). Next, Defendant argues that Sergeant Lindon violated the Fourth Amendment by continuing to investigate beyond the scope of the traffic violation because police lacked reasonable suspicion of any criminal activity. Third, Defendant argues that the officers' search of the passenger compartment of his vehicle violated the Fourth Amendment. Finally, Defendant argues that moving the vehicle to another location and conducting an extensive four-hour search of its compartments was unreasonable and in violation of the Fourth Amendment. Each of these arguments will be addressed in turn.

### A. There was probable cause to conduct the initial stop.

Defendant first argues that Sergeant Lindon's initial stop of the vehicle violates the Fourth Amendment because the interdiction team invented the "minor traffic violation" as a pretext to make the stop. (Doc. # 17 at 1). Defendant disagrees that crossing the fog line meets the definition of "careless driving" under Ky. Rev. Stat. § 189.290. Defendant also disputes Lindon's testimony that the interdiction team perceived such crossing of the fog line as careless driving in light of the fact that Lindon testified that the interdiction team was looking for a reason to initiate a traffic stop. *See* (Doc. # 39 at 2). The evidence presented at the March 20, 2019 evidentiary hearing, as well as relevant authority, contradicts Defendant's position, and the Court finds that police had a lawful basis to conduct the initial traffic stop.

First, repeated crossing of the fog line into the shoulder of the road constitutes careless driving in violation of Kentucky law and provides probable cause to conduct a traffic stop. Officer Lindon testified at the evidentiary hearing that driving on the shoulder of the road could endanger pedestrians and stranded motorists, and that repeated

crossing from the traffic lane across the fog line and into the shoulder constitutes careless driving under Kentucky law. The case law supports Officer Lindon's conclusion. A traffic stop was found to comport with the Fourth Amendment under similar circumstances when police witnessed a defendant's truck travel across the fog line and onto the rumble strips more than once over the course of three miles. *United States v. Copley*, No. 4:16-cr-10-JHM, 2016 WL 3964070, at *2 (W.D. Ky. July 19, 2016).

The *Copley* court stated that Kentucky's reckless driving statute, Ky. Rev. Stat. § 189.290, "does not require an operator to actually inconvenience or harm a pedestrian or other vehicle for a violation of the reckless driving statute to occur." *Id.* That court went on to explain that "[w]hen a driver travels across the fog line and onto the rumble strip repeatedly, the driver of the vehicle is not operating the vehicle in a careful manner with regard to the safety of other vehicles on the highway." *Id.* The *Copley* court concluded, therefore, that the officer "had probable cause to conduct a traffic stop of Defendant's vehicle for violating KRS § 189.290, the reckless driving statute." *Id. See also Baker v. Commonwealth*, 475 S.W.3d 633, 636 (Ky. Ct. App. 2015) (finding that hugging the fog line indicates the activity of an impaired driver and constitutes sufficient evidence to justify a traffic stop). Just as in *Copley*, here the officers observed Defendant cross over[2] the fog line numerous times within a few miles. Accordingly, the officers had probable cause to conduct a traffic stop.

---

[2] Defendant argues repeatedly that "touching of a line" is insufficient. *See* (Doc. # 39 at 3) (citing *United States v. Warfield*, 727 F. App'x 182 (6th Cir. 2018) (applying Ohio law)). This precedent does not appear to comport with Kentucky case law. *See Baker*, 475 S.W.3d at 636. Nevertheless, even assuming that Defendant is correct and "touching of a line" is insufficient, Defendant glosses over the fact that the testimony presented at the evidentiary hearing was that Defendant *crossed over*, not merely touched, the fog line repeatedly. Accordingly, Defendant's argument on this point is misplaced.

Defendant's argument that the officers admitted that they were looking for a reason to conduct a stop is irrelevant. Defendant notes that the tracking warrant only authorized police to follow Defendant's vehicle, not to conduct a stop, and that it is clear the officers were motivated to find a reason to stop Defendant. However, neither the officers' subjective intent, nor the limited language of the warrant, converts the stop into a Fourth Amendment violation. It is well-settled that an officer has probable cause under the Fourth Amendment to stop a vehicle when he observes a driver violate a traffic law. *United States v. Hughes*, 606 F.3d 311, 315 (6th Cir. 2010). The officers' internal motivation is irrelevant; "[s]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." *United States v. Colbert*, No. 3:10-cr-151, 2011 WL 2746811, at *3 (W.D. Ky. July 13, 2011) (citing *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993)). *See also Whren v. United States*, 517 U.S. 806, 810 (1996) (finding that any traffic offense committed by a driver forms a legitimate basis for a stop, regardless of any other personal motivations the officers might have had for stopping the vehicle); *United States v. Torres-Ramos*, 536 F.3d 542, 550 (6th Cir. 2008) ("[S]ubjective intent for executing the stop is irrelevant.").

Finally, Defendant challenges the credibility of the police officers and asserts that they "made up" the violation. At the evidentiary hearing, Officer Lindon denied making a false finding of careless driving and emphatically stated that as a Kentucky state trooper he takes his integrity seriously. The Court observed Officer Lindon's demeanor and found him to be a credible witness. His testimony appeared sincere and truthful. Moreover, the United States presented an audio recording from the day of the stop at the evidentiary

7

hearing. The recording shows the officers contemporaneously commenting on the movement of Defendant's vehicle and corroborates Officer Lindon's testimony; the contemporaneous nature of the officers' statements on the recording supports a finding that Officer Lindon actually observed what he testified to at the evidentiary hearing.

In sum, the Court credits Officer Lindon's testimony that the interdiction team witnessed Defendant cross over the fog line onto the shoulder multiple times within the space of a few miles. Accordingly, the Court finds that Lindon had probable cause to believe that a traffic violation—namely, violation of Ky. Rev. Stat. § 189.290, Kentucky's careless driving statute—had occurred, and therefore the initial stop did not violate the Fourth Amendment. *See Colbert*, 2011 WL 2746811 at *3.

**B. There was probable cause to extend investigation of the stop and search Defendant's vehicle based upon a reasonable suspicion of drug-trafficking activity.**

Next, Defendant argues that Sergeant Lindon violated the Fourth Amendment when he continued to investigate beyond the scope of the traffic violation by bringing in a drug-sniffing dog and searching the vehicle. (Doc. # 17). In support of his claim that the search was improper, Defendant points to the fact that the tracking warrant only provided for the placement of a tracking device and for the monitoring of the vehicle rather than authorizing a stop and search. (Doc. # 39 at 2). Defendant also asserts that police lacked reasonable suspicion of any criminal activity at the scene such as the odor of marijuana. *Id.* Relying on *Arizona v. Gant*, 566 U.S. 332 (2009), Defendant argues that "[t]here were no violations of any drug laws, there were no outstanding warrants, there was no suspicious activity, and there was no smell of marijuana which would lead that officer to believe that a full search of this car was necessary." (Doc. # 17 at 1-2). Defendant's

8

argument is misplaced because it ignores the probable cause that arose during the investigation of the stop, which permits a warrantless search.

"A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015). In investigating a traffic violation, Officers may conduct a canine sniff during a lawful traffic stop as long as the sniff does not extend the duration of the stop beyond the time reasonably necessary to address the traffic violation that warranted the stop. *Id. See also Illinois v. Caballes*, 543 U.S. 405, 407 (2005) (establishing that the use of a trained narcotics dog during a lawful traffic stop "generally does not implicate legitimate privacy interests"); *United States v. Garcia*, 496 F.3d 495, 504 (6th Cir. 2007) (affirming district court's refusal to suppress evidence seized and finding that the "canine narcotics sniff was lawfully conducted as part of the investigatory stop"). At the evidentiary hearing, defense counsel conceded that the four minutes it took for the drug dog to arrive on the scene was reasonable and did not extend the duration of the stop unnecessarily. Accordingly, use of the trained narcotics dog did not violate the Fourth Amendment.

Moreover, even if the initial purpose of the stop had been or could have been completed prior to the dog's free-air sniff of the vehicle, police may extend a stop beyond what is necessary to effectuate the original purpose if "something happened during the stop to cause the officer to have a reasonable and articulable suspicion that criminal activity is afoot." *United States v. Stepp*, 680 F.3d 651, 661 (6th Cir. 2012) (quoting *United States v. Davis*, 430 F.3d 345, 535 (6th Cir. 2005)). *See also Garcia*, 496 F.3d at 504 (affirming district court's refusal to suppress evidence and finding that the "canine narcotics sniff was lawfully conducted as part of the investigatory stop").

When determining whether the officer had developed a reasonable suspicion of criminal activity, the court considers the totality of the circumstances. *United States v. Richardson*, 385 F.3d 625, 630 (6th Cir. 2004). The officer "must point to 'specific and articulable facts' that are 'more than an ill-defined hunch.'" *Id.* at 630 (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). "Police officers are permitted 'to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *United States v. Shank*, 543 F.3d 309, 315 (6th Cir. 2008) (quoting *United States v. Martin*, 289 F.3d 392, 398 (6th Cir. 2002)).

Here, "something happened during the stop to cause the officer to have a reasonable and articulable suspicion that criminal activity is afoot." *Stepp*, 680 F.3d at 661. Namely, during his investigation of the traffic stop, Officer Lindon confirmed that Defendant's name, address, and vehicle registration matched the information of the suspect identified by the CS. This provided ample justification to conduct the open-air K-9 sniff.

Under Sixth Circuit law, it is well-established that a confidential informant's tips to law enforcement—when shown to be substantially corroborated—are sufficient to establish probable cause. *United States v. Strickland*, 144 F.3d 412, 417 (6th Cir. 1998). Specifically, the Sixth Circuit has repeatedly held that probable cause exists when an informant describes the details of a drug transaction that is to take place in the future, and those details are then independently observed by police officers. *See United States v. Gill*, 685 F.3d 606, 610 (6th Cir. 2012); *Strickland*, 144 F.3d at 417; *United States v. Barrett*, 890 F.2d 855, 861-62 (6th Cir. 1989). "The more unusual the occurrences are

that the police are able to confirm, the stronger the showing of probable cause, and vice versa." *Strickland*, 144 F.3d at 417. There is no requirement that officers witness an illegal event taking place before probable cause exists. *Id.* Therefore, officers need not observe a completed drug transaction before lawfully arresting a suspected narcotics trafficker. *Gill*, 685 F.3d at 610.

In *Gill*, William Holmes agreed to become a confidential informant after being arrested for the possession and sale of narcotics. 685 F.3d at 608. In the presence of police officers, Holmes called his supplier, Gill, who agreed to sell five ounces of cocaine to Holmes at a particular location on Vine Street in Cincinnati. *Id.* Holmes told police that Gill would be driving a green Acura. *Id.* As Holmes predicted, Gill arrived at the specified location on Vine Street in a green Acura. *Id.* He then exited the car and joined a group of individuals in front of a house alongside the street. *Id.* When police announced their presence, Gill fled on foot down the street, until he eventually stopped and surrendered to police. *Id.* A subsequent search of Gill's car revealed the five ounces of cocaine Holmes had requested on the phone. *Id.* The Sixth Circuit determined that there was probable cause to search the car, as police were able to corroborate Holmes's tip regarding the color and make of Gill's car as well as the time and location of the drug transaction.

Here, the CS's tips to the DEA were sufficient to establish probable cause because they were substantially corroborated. Similar to the informant in *Gill*, the police here were able to corroborate the CS's tip regarding the identification of Defendant's 2002 Toyota 4Runner with Michigan plates as well as the frequency and location of the drug trafficking from Michigan to Kentucky. They were also able to corroborate far more—including

Defendant's address, confirmed border crossings in between the United States and Mexico, and wire transfers from Defendant to individuals in Mexico. Given the totality of the circumstances, and following Sergeant Lindon's confirmation that Defendant was the suspect identified by the CS, the Court finds that these facts suffice to establish probable cause—let alone reasonable suspicion—that criminal activity was afoot. Accordingly, the free-air sniff by the K-9 unit was supported by probable cause and did not violate the Fourth Amendment.

Likewise, the K-9's detection of the odor of controlled substances provided additional probable cause to conduct a search of Defendant's vehicle. The Fourth Amendment's prohibition against unreasonable searches and seizures "extend[s] to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Chandler*, 437 F. App'x 420, 425 (6th Cir. 2011) (internal citations omitted). Accordingly, the Fourth Amendment generally requires that police obtain a warrant before conducting a search. *Maryland v. Dyson*, 527 U.S. 465, 466 (1999). In the context of movable vehicles, however, warrantless searches are constitutional upon a finding of probable cause such that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Cope*, 312 F.3d 757, 775 (6th Cir. 2002) (internal citation omitted). *See also California v. Acevedo*, 500 U.S. 565, 580 (1990) ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained.").

A positive reaction by a properly-trained narcotics dog establishes probable cause for the presence of controlled substances and justifies a warrantless search of a stopped vehicle. *United States v. Hill*, 195 F.3d 258, 273 (6th Cir. 1999) (citing *United States v.*

*Diaz*, 25 F.3d 392, 394 (6th Cir. 1994) ("It is well-established in this Circuit that an alert by a properly-trained and reliable dog establishes probable cause to justify a warrantless search of a stopped vehicle.")); *United States v. Berry*, 90 F.3d 148, 153 (6th Cir. 1994). Here, the K-9's positive alert for the presence of narcotic odor gave the officers probable cause to search Defendant's vehicle.

Defendant's reliance on *Gant* is misplaced. Not only did *Gant* discuss the search-incident-to-arrest exception to the warrant requirement, which is inapplicable to the case at bar, the *Gant* Court expressly noted that "a search of any area of the vehicle in which the evidence might be found" is authorized when "there is probable cause to believe a vehicle contains evidence of criminal activity." *Gant*, 556 U.S. at 347. It is clear that, upon the dog's positive signal, the police officers had reasonable grounds to believe that further evidence of a crime might be found inside the vehicle. Accordingly, the officers' decision to search Defendant's vehicle without a warrant was proper under the automobile exception because there was probable cause and a reasonable suspicion of ongoing criminal activity based upon the corroborated information provided by the CS and the positive drug-dog alert.

**C.     The officers' search of the vehicle was reasonable in scope.**

Defendant next argues that even if the search was initially proper, police exceeded the scope of the search by moving the vehicle to another location and spending several hours searching the vehicle before ultimately removing the car stereo and locating drugs in a hidden compartment. (Doc. # 39 at 2-3). Defendant's argument, however, is misplaced. Suppression is unwarranted because the officers had probable cause to

search the entirety of Defendant's vehicle, and moving the vehicle a short distance away for officer safety was not unreasonable.

### 1. *The scope of the search did not violate the Fourth Amendment.*

In his brief, Defendant has failed to point to any on-point authority to indicate that police violated the scope of a proper search under the Fourth Amendment by dismantling the car stereo or searching inside the dashboard over the course of a few hours. The officers' search of the vehicle, though extensive, was proper in scope.

As the Supreme Court noted in *Gant*, "[i]f there is probable cause to believe a vehicle contains evidence of criminal activity . . . a search of *any area* of the vehicle in which the evidence might be found" is authorized. *Gant*, 556 U.S. at 347 (emphasis added). Such probable cause "extends to every part of the vehicle and all containers found therein in which the object of the search could be hidden. *United States v. Winters*, 782 F.3d 289 (6th Cir. 2015) (internal citation omitted); *accord United States v. Ross*, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully-stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."). "Indeed, once a dog properly alerts, 'officers clearly ha[ve] probable cause, not only to . . . search the vehicle, but to dismantle it as well.'" *United States v. Bernal*, No. 5:17-CR-102-DCR-REW, 2017 WL 5662299, at *11 (E.D. Ky. Oct. 26, 2017) (citing *United States v. Guerrero-Sanchez*, 412 F. App'x 133, 141 (10th Cir. 2011)) (collecting cases). When the narcotics K-9 positively alerted on the vehicle, it was reasonable for officers to search any area of the vehicle where narcotics could be hidden—including the dashboard area of the vehicle. Consequently, the search was proper in scope and suppression is not warranted.

## 2. Moving the vehicle a short distance away did not violate Defendant's Fourth Amendment rights.

Defendant has also failed to point to any authority supporting his argument that the police violated this Fourth Amendment rights by moving Defendant's vehicle from the shoulder of Interstate 75 to a safe, nearby location. In evaluating the appropriateness of moving the Defendant's vehicle from the shoulder of Interstate 75 to a nearby garage, courts examine whether, under a reasonableness standard, the move "was more intrusive than necessary to fulfill the purpose of the stop." *United States v. Pino*, 855 F.2d 357, 362 (6th Cir. 1988) (holding that moving vehicle to nearby underpass was necessary to shield officers and defendant from the rain and to promote the safety of vehicles passing by on the interstate). *See also Carter v. Hamaoui*, 699 F. App'x 519, 533 (6th Cir. 2017) (finding that "once the police had probable cause to search the truck, they also had probable cause to move the truck to a location where they could properly and safely search through it."). The Sixth Circuit indicated that moving locations during an investigation can become overly-intrusive when the purpose is to move "to a more institutional setting such as a police station or interrogation room" as opposed to a move motivated by practical reasons such as officer safety or inclement weather. *Pino*, 855 F.2d at 362.

Here, as in *Pino*, the move to the nearby garage was necessary to promote the safety of the officers and the vehicles passing by on the interstate. *Id.* The traffic stop occurred while the sun was setting,[3] and Officer Smith testified at the evidentiary hearing that the shoulder was not safe, as wind from a tractor trailer passing close by Defendant's parked vehicle slammed the driver's side door onto one of the interdiction team members

---

[3] The Court takes judicial notice that sunset occurred at approximately 9:05 p.m. on July 11, 2018.

performing the search.  Additionally, the move was "not to a more institutional setting such as a police station or interrogation room."  *Id.*  Consequently, the move was not more intrusive than necessary to effectuate the purposes of the traffic stop, and suppression is unwarranted.  *Id.*

**IV.	CONCLUSION**

Accordingly, for the reasons set forth herein, **IT IS ORDERED** as follows:

(1)	Defendant's Motion to Suppress (Doc. # 13) is **DENIED**;

(2)	The time period between December 13, 2018—the date on which Defendant's Motion to Suppress was filed—and the date of the entry of this Order, totaling 127 days, is **excluded** from the provisions of the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(1)(D) & (H); and

(3)	This matter is schedule for a **Status Conference** on **Tuesday, April 30, 2019** at **10:00 a.m.** in **Covington** at which time the Court will set this matter for trial.

This 19th day of April, 2019.



Signed By:
*David L. Bunning*  DB
United States District Judge

K:\DATA\ORDERS\Covington Criminal\2018\18-46 MOO Denying MTS.docx

16